IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PARVIZ KAYVONFAR, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CV-02-BE-0128-S |
| | } | |
| US XPRESS ENTERPRISES, INC. | } | |
| and CHRISTOPHER COLLINS, | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

This case is before the court on Attorney Jerry Roberson's Motion for Hearing to Determine Amount of Attorney's Lien filed August 26, 2002 and J. Vincent Low's Motion for Sanctions. The court held a hearing on these issues on October 18, 2002. Having considered the briefs, evidentiary submissions, and arguments of counsel, the court denied the Motion for Sanctions for the reasons discussed in this opinion.

At the hearing, the court awarded an attorney's fee of $15,000.00 to Mr. Low based on an extremely generous quantum meruit finding. However, the court determined that Mr. Low's fee should be reduced by the reasonable costs incurred by Mr. Roberson in trying to resolve Mr. Low's unreasonable fee requests. After reviewing an itemized statement for fees and expenses submitted by Mr. Roberson following the hearing, the court finds these expenses reasonable and by separate order will require that Mr. Low's fee be reduced by $2,887.00, leaving a fee award of $12,113.00. The court will order Mr. Roberson to pay the fee award into the registry of the court. The court has serious questions about Mr. Low's competence and financial solvency because of

evidence submitted at the hearing that Mr. Low has numerous judgments pending against him. To receive his fee, Mr. Low must petition this court for an Order releasing these funds. The petition must clearly set forth Mr. Low's financial condition and the status of any judgments or pending litigation against Mr. Low.

### I. Procedural History and Facts

Parviz Kayfonvar was injured when he was involved in an automobile accident with a tractor-trailer on October 20, 2000. Following the accident, Mr. Kayfonvar entered into a contingency fee agreement with J. Vincent Low whereby Mr. Low agreed to represent Mr. Kayfonvar. Mr. Low and Mr. Kayfonvar signed the agreement on November 16, 2000. The Alabama State Bar suspended Mr. Low's license to practice law on May 23, 2001. Mr. Low's suspension was the result of a Petition for Interim Suspension filed by the Office of General Counsel of the Alabama State Bar. The petition included a medical evaluation by a professor of medicine at the University of Alabama at Birmingham School of Medicine that stated that Mr. Low suffers from "substantial impairment of cognition." In addition, the petition included an affidavit by J. Anthony McClain, General Counsel of the Alabama State Bar, that listed four current investigative files pending against Mr. Low. All four cases involved allegations by Mr. Low's former clients that Mr. Low misappropriated settlement or loan closing funds. Mr. Low self-reported to the Office of General Counsel of the Alabama State Bar on January 30, 2002, that his client trust account was over $66,000.00 short and that he was liable to First Indiana Bank and other third parties as a result of this shortage.

After his suspension from the practice of law, Mr. Low referred Mr. Kayfonvar's case to

Jerry Roberson[1] at the law firm of Roberson and Roberson. Mr. Low testified at the hearing that he made this referral prior to his suspension from the bar and that he entered into a contract with Mr. Roberson and Mr. Kayvonfar consummating the referral during the first or second week of May, 2001. However, Mr. Kayvonfar testified at the hearing that he signed a contract at a meeting with Mr. Low and Mr. Roberson regarding the referral on July 18, 2001, over six weeks after Mr. Low's license was suspended. Specifically, Mr. Kayvonfar testified that Mr. Low and Mr. Kayfonvar signed a contingency fee agreement with Mr. Roberson that assigned the case to Mr. Roberson and set a 30% contingency fee for the Roberson and Roberson law firm. Mr. Kayvonfar's testimony was validated by Plaintiff's Exhibit 7, which was a copy of the July 18, 2001, agreement entered into by Mr. Kayvonfar, Mr. Low, and Mr. Roberson.

Prior to accepting Mr. Low's referral of the case, Mr. Roberson requested an opinion from the General Counsel of the Alabama State Bar regarding whether Mr. Roberson could pay Mr. Low a referral fee.[2] The General Counsel informed Mr. Roberson via a July 17, 2001,

---

[1]Although Mr. Low stated the referral was made to Chris Roberson, he admitted that Jerry Roberson attended the meeting. Chris Roberson passed away before this matter was resolved. The court notes that all pleadings in this case on behalf of Mr. Kayvonfar were signed by Jerry Roberson. "Mr. Roberson" as used in this opinion refers to Jerry Roberson.

[2]Rule 1.5(e) of the Alabama Rules of Professional Conduct states the following:

A division of fee between lawyers who are not in the same firm, including a division of fees with a referring lawyer, may be made only if:
(1) either (a) the division is in proportion to the services performed by each lawyer, or (b) by written agreement with the client, each lawyer assumes joint responsibility for the representation, or (c) in a contingency fee case, the division is between the referring or forwarding lawyer and the receiving lawyer;
(2) the client is advised of and does not object to the participation of all the lawyers involved;
(3) the client is advised that a division of fee will occur; and
(4) the total fee is not clearly excessive.

facsimile that Mr. Low could only receive a fee based on quantum meruit for legal work done prior to Mr. Low's suspension from the bar.

Mr. Roberson received Mr. Low's file for the case in July 2001 and conducted discovery until September 2001. In September 2001, Mr. Roberson and his law partner went to a mediation with the defendant and its insurance provider. The mediation was unsuccessful and Mr. Roberson filed this lawsuit on January 16, 2002. The case was settled on or about August 14, 2002, for a confidential amount.

On August 14, 2002, Mr. Roberson wrote Mr. Low to advise him that the case had been settled and to request an itemization of Mr. Low's fees. On August 21, 2002, Mr. Low sent a letter to the court asking for an award of one-half of Mr. Roberson's contingency fee. On August 26, 2002, Mr. Roberson filed a Motion for Hearing to Determine Amount of Attorney's Lien asserting Mr. Roberson's belief that Mr. Low was entitled to a quantum meruit attorney's fee and seeking a hearing to resolve this issue. Mr. Low filed a Motion for Sanctions against Mr. Roberson on September 26, 2002, alleging that Mr. Roberson made false statements to the court. In addition, Mr. Low requested a quantum meruit fee of $96,000.00 for allegedly working 192 hours at a rate of $500.00 per hour on Mr. Kayvonfar's case prior to the referral.

## II. Applicable Law and Findings of Fact

Part performance of a contract, prior to being discharged, entitles one to recover on a quantum meruit basis for those services rendered. The Alabama Supreme Court has clearly

---

Therefore, a referral fee is appropriate in certain circumstances between <u>lawyers</u>. In the instant case, Mr. Low was not a licensed attorney at the time he referred the case to Mr. Roberson. Thus, because Mr. Low was not in good standing at the time the referral was made, he cannot receive a referral fee from Mr. Roberson.

stated that "[t]he Rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated only for services rendered before such discharge." *Owens v. Bolt*, 218 Ala. 344, 348 (1928). Thus, an attorney who refers a case as a result of being suspended from the bar is entitled to a reasonable quantum meruit fee for the services rendered prior to the referral.[3]

Furthermore, Rule 5.4(a) of the Alabama Rules of Professional Conduct expressly forbids attorneys from sharing legal fees with a non-lawyer.[4] As previously discussed, the evidence at the hearing established that Mr. Low was suspended from the bar prior to the time he referred this lawsuit to Mr. Roberson. Thus, Mr. Roberson is precluded by Rule 5.4(a) from splitting the contingency fee in this case because Mr. Low was not licensed to practice law at the time of the referral.

Having determined that the law requires that Mr. Low receive an attorney's fee based on quantum meruit, the court addresses Mr. Low's actions before this court. The evidence submitted to this court at the hearing raises serious questions about the propriety of Mr. Low's

---

[3] On August 15, 2002, L. Gilbert Kendrick, Assistant General Counsel for the Alabama State Bar, wrote Mr. Roberson in response to a written inquiry from Mr. Roberson regarding the facts of this case. Mr. Kendrick advised Mr. Roberson that "the suspended attorney is entitled to *quantum meruit*, i.e., a reasonably hourly rate for the time he actually expended on the case. A reasonable hourly rate would be the amount the suspended attorney customarily charged for his services when he was in active practice. If you deem it necessary, you may require the suspended attorney to produce billing statements to substantiate his hourly rate." While this court recognizes that Mr. Kendrick's letter was merely an informal opinion of the Office of General Counsel, the court notes that Mr. Kendrick's recommendation is consistent with the ruling of this court.

[4] Subject to certain exceptions that are inapplicable to this case, Rule 5.4(a) sets forth the general rule that "[a] lawyer or law firm shall not share legal fees with a nonlawyer." ALA. RULES OF PROF'L CONDUCT R. 5.4(a).

actions. First, Mr. Low stated in his Motion for Sanctions that he entered into a referral contract with Mr. Roberson during "the first or second week in May 2001." Mr. Low sought sanctions from this court because Mr. Roberson allegedly misrepresented to the court the date of the contract between Roberson and Low to the court. However, as previously discussed, the client, Mr. Kayfonvar, testified at the hearing that Low, Roberson, and Kayvonfar signed the contract at issue on July 18, 2001, as represented by Mr. Roberson. Therefore, not only did Mr. Low have no factual basis for the sanctions he sought, the evidence suggests that Mr. Low misrepresented the date of the contract to this court. Mr. Low also misrepresented the amount of the contingency fee in the Low, Roberson, and Kayvonfar contract. In his Motion for Sanctions, Mr. Low represented that the contract contained a 33 1/3% contingency, even though the signed contract contains a 30% contingency. Although the court does not determine whether Mr. Low intentionally misrepresented this information,[5] the court notes that Mr. Low sought attorney's fees for his referral of this case. Because a referral fee is only available to a licensed attorney and Mr. Low was suspended from the bar on May 24, 2001, the date of the referral was critical to Mr. Low's argument. Quite simply, this court has never seen a more frivolous motion than that submitted by Mr. Low. Accordingly, at the hearing the court denied Mr. Low's Motion for Sanctions.

Mr. Low's Motion for Sanctions also contained a request that this court award him $500.00 an hour for the work that he did on this case. Mr. Low's requested hourly rate shocks the conscience of this court. The court is unaware of any attorney in the Northern District of

---

[5]The court notes that Mr. Low has been diagnosed with hypertension and dementia, and the court recognizes that these ailments may have affected his memory of the events in question.

Alabama who would charge such an exorbitant rate to retrieve a client's medical records. Furthermore, Mr. Low testified that he spent 200 hours tracking down Mr. Kayvonfar's medical records.[6] When questioned by this court, Mr. Low could provide no substantive records for this time, nor could he provide a sufficient explanation for why it took him 200 hours to write at most 5-20 letters for his client. The court questions whether Mr. Low actually did as much work as he claims he did. Mr. Kayvonfar testified that he retrieved some of his own medical records and delivered them to Mr. Low.

The court is surprised that an attorney who has been suspended from the practice of law purportedly for medical reasons and has numerous civil and criminal actions pending against him involving the mismanagement of client funds would have the audacity to demand a $96,000 fee for sending his client to retrieve many of his own medical records. Mr. Low's exorbitant fee request cheapens the integrity of the legal profession and violates the spirit, if not the letter, of Rule 11 of the Federal Rules of Civil Procedure.

Furthermore, the fee request fails to meet any of the criteria found in Rule 1.5 of the Alabama Rules of Professional Conduct. Rule 1.5 states that the following factors are to be considered in determining whether a fee is excessive:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

---

[6] In his Motion for Sanctions, Mr. Low stated that he "put in 4 hours a day, 6 days per week, or 24 hours per week, or 96 hours per month for 2 months @ $500 per hour equals $96,000 in quantum meruit to justify his fee." However, at the hearing Mr. Low testified he spent 200 hours on the case. The court assumes that Mr. Low was estimating his hours at the hearing due to the absence of any written records of Mr. Low's time.

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent; and

(9) whether there is a written fee agreement signed by the client.[7]

The court specifically questioned Mr. Low regarding the above criteria and he failed to provide any testimony or evidence to justify his fee. For example, Mr. Low testified that the acceptance of employment in this case did not preclude him from handling other matters and that no time limitations resulted from his work on this case. Mr. Low also testified that this case was his first professional relationship with Mr. Kayvonfar. In addition, Mr. Low testified that his general legal practice involves real estate foreclosures and that he does not regularly handle personal injury cases. Mr. Low did call his appointed legal advisor in a pending criminal matter, Kenneth J. Gomany, as a witness to testify about the reasonableness of Mr. Low's fee request. Mr. Gomany candidly testified that he was unaware of any other attorneys in the Birmingham area that charged $500 an hour in similar cases. Thus, because Mr. Low failed to come forth with any evidence to justify his fee request, the court's only basis for determining the appropriate fee was Mr. Roberson's extremely generous offer of $15,000.00.

---

[7]The Alabama Supreme Court has directed courts to use the factors now found in Rule 1.5 in determining the reasonableness of attorney's fees. *See Peebles v. Miley*, 439 So. 2d 137, 140 (Ala. 1983) (noting approval of factors in Model Code of Professional Responsibility, DR 2-106 (B)).

Perhaps the most troubling of Mr. Low's actions was the testimony he gave regarding conduct that appears to qualify as practicing law without a license, an activity that is strictly forbidden by Rule 5.5 of the Alabama Rules of Professional Conduct. Mr. Low testified that he wrote a letter on Mr. Kayvonfar's behalf on July 19, 2001, to Liberty Mutual Insurance Company in an attempt to settle the matter. This letter was written almost two months after Mr. Low's law license was suspended on May 24, 2001, and one day after Mr. Low referred the case to Mr. Roberson. The evidence also indicated that Mr. Low might have made other communications on Mr. Kayvonfar's behalf after Mr. Low's license was suspended.

The court takes seriously the responsibility of all members of the legal community to report professional misconduct under Rule 8.1(a)[8] of the Alabama Rules of Professional Conduct. Mr. Low's conduct observed by this court appears to constitute misconduct under Rule 8.4 of the Alabama Rules of Professional Conduct.[9] First, Mr. Low attempted to violate Rule

---

[8]Rule 8.1 of the Alabama Rules of Professional Conduct states the following:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[9]Rule 8.4 of the Alabama Rules of Professional Conduct states the following:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness

5.4(a) and attempted to induce another to violate Rule 5.4(a) by requesting that Mr. Roberson split the contingency fee with him after he had been suspended from the bar. See ALA. RULES OF PROF'L CONDUCT 8.4(a). Second, Mr. Low's request for a fee based on 192 hours of work at $500 an hour and the misrepresentations made to this court to support his claim reflects "conduct involving dishonesty, fraud, deceit or misrepresentation." See ALA. RULES OF PROF'L CONDUCT 8.4(c). Third, at a minimum, Mr. Low's actions in this matter were "prejudicial to the administration of justice." See ALA. RULES OF PROF'L CONDUCT 8.4(d). Therefore, the court is forwarding a copy of this Order to the General Counsel of the Alabama State Bar. Mr. Low is scheduled to appear before the bar on December 11, 2002, for a hearing on readmission. This court believes that Mr. Low's testimony and conduct in this matter raises serious questions about Mr. Low's fitness to practice law, and the duty of this court and of all attorneys is to report such information to the bar.

---

or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable Canons of Judicial Ethics or other law; or

(g) Engage in any other conduct that adversely reflects on his fitness to practice law.

DONE and ORDERED this 6th day of November, 2002.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE